# Reimbursing Justice Department Employees for Fees Incurred in Using Private Counsel Representation at Congressional Depositions

The Department of Justice may reimburse its employees for legal fees they incur in using private counsel representation at congressional depositions in circumstances where the Department was planning to provide Department counsel for official capacity testimony but the congressional committee refused to permit Department counsel to be present.

The Department should make individualized inquiries to determine whether the representation of particular employees includes representation of purely personal interests that should not be reimbursed.

September 27, 1990

MEMORANDUM OPINION FOR THE DEPUTY ATTORNEY GENERAL

You have asked for our opinion as to whether the Department may reimburse Department employees for legal fees they incur in using private counsel representation at depositions that are part of the investigation by the House Judiciary Committee into the Department's automated data processing procurement practices.[1] For the reasons set forth below, we conclude that the Department may reimburse the employees. You have not asked us to make the individualized inquiries necessary to determine whether the representation of particular employees includes representation of purely personal interests that should not be reimbursed. We do note, however, that we are unaware at this time of any such interests. The Civil Division concurs in the analysis and conclusions contained in this opinion.

## I. Background

The House of Representatives Committee on the Judiciary is conducting an extensive oversight investigation into the Department's automated data processing ("ADP") procurement practices, with particular attention to the Inslaw and Project Eagle procurements.[2] Early in its investigation, the Committee requested interviews of Department employees concerning the

---

[1] This opinion does not apply to the special circumstances of a former Department employee who is currently the subject of an Inspector General investigation.

[2] Because the principal focus of the investigation is on the Inslaw procurement, we will refer to the investigation as the "Inslaw investigation."

Departments handling of these procurements. In light of the oversight purpose of the interviews (*i.e.*, to obtain information from the Department in order to determine what legislative action, if any, Congress should take with respect to the Department's ADP procurement practices), the Department determined that it was in the Department's interests to make the employees available for the interviews.

For the same reasons, the Department treated the interviews as being given in the employees' official rather than individual capacities and applied its longstanding policy that when Department employees are asked in their official capacities to give oral testimony for a congressional investigation (whether at a hearing, interview or deposition), a Department counsel or other representative will normally accompany the witness. When the Department informed the Committee of its interest in having Department counsel present during the interviews, the Committee objected, stating that the Department presence would represent a conflict of interest and it might discourage the employees from speaking candidly or otherwise have a "chilling effect" on them.

After a period of discussion, the Committee and the Department reached agreement on the conditions of the employee interviews, with the Department acquiescing to the committee's insistence that the interviews take place without Department counsel being present. The Department made it clear that its agreement to make an exception to the longstanding Department policy was based on the specific circumstances of the Inslaw investigation and that these interviews should not be viewed as precedent for future oversight investigations of the Department by the Committee. The Committee staff proceeded to interview the employees without Department (or any other) counsel present.

Subsequently, the Committee informed the Department of its intention to conduct depositions of certain Department employees. The depositions were to differ in form from the previously conducted interviews principally in that the witnesses would testify under oath and the testimony would be recorded. In light of these differences, the Department gave renewed consideration to whether it should adhere to the longstanding Department policy and insist that Department counsel be present at the depositions. When the Department preliminarily raised its concerns with the Committee, the Committee indicated that it would adhere to its prior position of not permitting Department counsel to be present and that it was prepared to subpoena the employees (in which case, it asserted, the House rules would only allow private counsel to be present to advise the witness of his constitutional rights). You then decided that the Department would again acquiesce to the Committee's position and not insist that Department counsel be present but that if any employee wanted counsel at his deposition, the employee could retain private counsel and the Department would reimburse the employee.

Your decision that the Department would reimburse employees for their private counsel fees was based on the specific circumstances presented. These

circumstances include that the Committee is not permitting the Department to adhere to its longstanding policy of providing Department counsel when employees give congressional testimony in their official capacities, that it is not fair to expect employees to pay for private counsel when testifying in their official capacities, that there are no pending criminal investigations involving the employees, and that there is no other divergence between the interests of the Department and the employees.

At the time you made your decision, the Civil Division and this Office had orally advised you that the Department has legal authority to make such reimbursement. You have asked that this advice be confirmed in a written opinion from this Office. We have prepared this opinion in consultation with the Civil Division.

## II. Discussion

The vast majority of Department reimbursements of private counsel fees involve payment, pursuant to the Department's representation guidelines, to employees who seek representation in their *individual* capacity; in these cases the acts being questioned are within the scope of the employees' employment but the Department has some conflict of interest. On rare occasions reimbursement has also been made for employees who need representation in their *official* capacities but for institutional reasons the Department must seek to represent them indirectly through reimbursed private counsel. The present situation is one of the latter occasions, due to the refusal of the Judiciary Committee to permit the Department to follow its longstanding policy that Department counsel should be present at official capacity testimony for congressional investigations.[3]

The general principles on Departmental authority that apply in these circumstances are well established:

---

[3] For your information, the Department's representation guidelines are inapplicable here because they only

govern the legal representation of employees "sued or subpoenaed in [their] *individual capacities.*" 28 C.F.R. § 50.15(a). Representation of employees in their *official capacities* is provided automatically, without reference to the representation guidelines. Since suits or subpoenas against employees in their official capacities are tantamount to suits or subpoenas against the government itself, official capacity representation is virtually always provided by government attorneys. By contrast, when an employee is sued or subpoenaed in his individual capacity, there is the potential for conflict between the individual interest of the employee and the interests of other employees. . . . [The] representation guidelines are designed to set standards for determining 1) whether to provide individual capacity representation, . . . and if so, 2) whether to provide that representation by government counsel or by private counsel retained at government expense.

Memorandum for the Deputy Attorney General from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Reimbursement of Anne M. Burford for Private Counsel Fees*, at 3 n.3 (May 3, 1983) ("Burford Memorandum").

The practice of retaining and paying private attorneys was born of necessity. From time to time, cases arise in which it is awkward from an institutional or professional standpoint for the Attorney General to represent government employees directly, through DOJ attorneys, even though it is clear that representation would be in the interests of the United States. . . . [I]n such cases . . . the Attorney General has "implied authority" to provide representation . . . through a mechanism that will enable him to resolve the professional difficulty. Using his general authority to contract for services that are necessary in the performance of his statutory functions, he may hire private lawyers to do indirectly what it would be awkward or inappropriate for the United States to do directly through DOJ lawyers.[4]

The conclusion that the Attorney General has such implied authority is based on that fact that he possesses not only representational authority, *see* 28 U.S.C. § 517, but executive authority as well, *see* 28 U.S.C. § 509, and the latter may be used in furtherance of the former.[5]

A number of opinions of this Office specifically hold that where Department representation would ordinarily be provided in a congressional investigation but is inappropriate under the specific circumstances, the Department may reimburse a government employee for legal fees incurred using private counsel.[6] Indeed, one opinion addressed a situation that was strikingly similar to the present situation. During the course of an investigation by the Permanent Subcommittee on Investigations of the Senate Committee on Governmental Affairs into the Labor Department's handling of Teamsters'

---

[4] Memorandum for Edward C. Schmults, Deputy Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Civil Division's Recommendations Concerning Reimbursement of Legal Expenses*, at 2-3 (June 24, 1981).

[5] *See* Memorandum for Glen E. Pommerening, Assistant Attorney General for Administration, from Antonin Scalia, Assistant Attorney General, Office of Legal Counsel, *Re: Authority for Employment of Outside Legal Counsel*, at 6 (Mar. 4, 1976) ("Pommerening Memorandum") ("[I]nterests of the United States, as well as interests of the individual Federal employees, are at stake. Because of possible conflicts of interest, representation by Department employees is not feasible. In these circumstances, . . . the Attorney General can use his general authority as the head of the Department, *see* 28 U.S.C. 509, to further the . . . interests of the United States by retaining private attorneys."); Memorandum for James A. Barnes, General Counsel, Environmental Protection Agency, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Payment of Private Counsel Fees Incurred by Anne M. Burford*, at 3 (Mar. 12, 1984) ("When the Department of Justice provides representation to agency employees, it does so pursuant to 28 U.S.C § 517 . . . .").

[6] *See* Burford Memorandum, n.3 (the government may reimburse former Administrator of EPA for private counsel fees incurred in connection with congressional investigations into management and activities of EPA), Memorandum for J. Paul McGrath, Assistant Attorney General, Civil Division, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Reimbursing Norman Edward Perkins for Attorney's Fees* (Mar. 15, 1982) ("Perkins Memorandum") (Justice Department may reimburse Labor Department employee for private counsel legal expenses incurred in testimony before Senate subcommittee investigative hearing); Pommerening Memorandum, n.5 (Justice Department may retain private counsel for employees of various agencies in connection with congressional hearings and civil litigation).

135

Union matters, many Labor Department employees testified before the Subcommittee while accompanied by Justice Department counsel. However, the Chairman of the Subcommittee, Senator Nunn, objected to Norman Edward Perkins and one other Labor Department employee being accompanied by Justice Department counsel because the Subcommittee suspected these individuals of criminal conduct. The apparent rationale for the Subcommittee position on Department representation was that the Subcommittee "wished to avoid a conflict of interest which could have arisen if Justice later decided to prosecute Mr. Perkins." Perkins Memorandum at 3. Upon discussing the matter with Senator Nunn, Attorney General Civiletti acquiesced to the Senator's preference and agreed that Perkins and the other employee would not be accompanied by Department counsel. *Id.* at 2. Perkins retained private counsel (*id.* at 1) and reimbursement of his counsel fees was approved by this Office's opinion (*id.* at 6).

The Perkins situation was basically the same as the present one. "In the absence of the Nunn-Civiletti agreement, it appears that Perkins would have been represented by a Justice Department attorney, as were the other Labor Department employees." *Id.* at 3. Likewise, Department counsel would be representing the employees at the Judiciary Committee depositions but for the Department's agreement (by acquiescing to the Committee's position) that Department counsel would not be present at the employee interviews or depositions. In addition, in the two situations Senator Nunn and the Judiciary Committee were each concerned that Department representation would present a conflict of interest. Although the Department in fact had no conflict of interest in the Perkins situation because no criminal investigation had been initiated (*see id.* at 4), and the Department has no conflict of interest in the present situation because the employees are appearing in their official capacities and there is no pending criminal investigation, in both cases the Department acquiesced to the congressional committee's position and made an exception to the longstanding policy that government counsel accompany government employee witnesses.

Although the Department's representation guidelines do not apply in this situation, *see* n.3 *supra*, reimbursing the employees is consistent with the principles underlying the guidelines. In reaching this conclusion, we adopt the analysis we used in the Perkins matter.[7] We noted there that the guidelines authorize use of private counsel where the employee is the subject of a federal criminal investigation or the representation would involve asserting a position that conflicts with a government position. We indicated that while there was no ongoing criminal investigation or conflicting positions, "[b]oth the concern of possible criminal conduct and the possible conflict arising

---

[7] In a comment that underscores the factual similarities between the Perkins matter and the present situation, we noted in the Perkins opinion that "[b]ecause denial of representation appears to have been based not on an interpretation of the Justice Department's Representation Guidelines, but rather on urging of a United States Senator, the usual grounds for permitting representation by private counsel at federal expense are not readily applicable." *Id.* at 3.

from Justice Department representation of Perkins appear to have motivated the agreement between Senator Nunn and Attorney General Civiletti . . . [and] therefore . . . reimbursement . . . can be supported by the principles underlying [the guidelines]." *Id.* at 5. Similarly, in the present situation, even though there are no pending criminal investigations or other conflicting positions, the Judiciary Committee has asserted that the Department has a conflict of interest, and in light of that position the Department has acquiesced to the Committee's insistence that Department counsel not be present.

Finally, we should make it clear that this opinion addresses only the question you asked: whether as a general matter the Department has authority to reimburse Department employees for private counsel fees in connection with the Judiciary Committee depositions. To answer that question in the affirmative, it has only been necessary to find that sufficient governmental interests are at stake in all of the depositions to justify representation by Department counsel — and when the Committee objected to the presence of Department counsel, representation by private counsel paid for by the Department.

You have not asked us to make the individualized inquiries necessary to determine whether the representation of any particular employee to whom this opinion applies may involve "purely personal" as well as governmental interests. Thus, we do not opine on "what, if any, portion of the representation" of particular employees should not be "provided by Government attorneys or at Government expense." Perkins Memorandum at 4.[8] We do note, however, that it would appear at this time that any personal interests are merely incidental to the governmental interests. After looking into the matter thoroughly, the Civil Division knows of no personal or official wrong-doing of which the employees could fairly be accused. Like all witnesses before Congress, the employees have "personal" interests such as being treated fairly, having a full and fair opportunity to respond, and avoiding being made an unfair target of congressional criticism; beyond that, these witnesses are appearing before Congress only because they did their jobs as Department employees. These personal interests would not appear to be of the kind this Office has previously identified as "purely personal."[9]

## CONCLUSION

We conclude, under these specific and unusual circumstances, that the Department may reimburse Department employees for legal fees they incur in connection with their representation by private counsel at the depositions

---

[8]*See also Representation of White House Employees,* 4B Op. O.L.C. 749, 750 (1980) ("White House Memorandum") ("No government attorney, and no private attorney retained at government expense may represent the *personal interests* of White House employees in connection with the Senate investigation ")

[9]*See* White House Memorandum, 4B Op. O.L.C. at 753 ("[T]he interests in avoiding federal criminal prosecution, civil liability to the United States or adverse administrative action by a federal agency are clearly personal rather than governmental interests.").

being conducted by the Judiciary Committee. You have not asked us to make the individualized inquiries necessary to determine whether the representation of particular employees includes representation of purely personal interests that should not be reimbursed. We do note, however, that we are unaware at this time of any such interests. The Civil Division concurs in our analysis and conclusions.

JOHN O. McGINNIS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*